570 A.2d 1382

**In the Matter of Petition of the BOROUGH OF WESTMONT to Receive Court Approval to Sell Lots 20 and 21 in Block 40 on the Plan of Westmont Known as the Old Fire Hall on Dartmouth Avenue.**

**Appeal of James Francis O'MALLEY and Jean O'Malley.**

Commonwealth Court of Pennsylvania.

Argued Feb. 5, 1990.

Decided March 1, 1990.

---

Margaret A. O'Malley, with her, James Francis O'Malley, Yost and O'Malley, Johnstown for appellants.

Martin Nadorlik, pro se.

Martin Nadorlik, for appellee Patricia Nadorlik.

Before CRAIG and PALLADINO, JJ., and NARICK, Senior Judge.

CRAIG, Judge.

James and Jean O'Malley appeal a decision of the Court of Common Pleas of Cambria County that removed a municipal purpose restriction imposed on two adjacent lots, upon which the Borough of Westmont's former municipal building is situated, and placed a permanent restriction on the lots that limited the use of the lots to single-family dwellings.

In 1915 and 1924, Cambria Iron Company, now known as Bethlehem Steel Company, conveyed the two lots to the borough by a deed that contained a restriction which required the lots to be used only for municipal purposes. The borough's former municipal building, a two-story brick building, has been unoccupied since 1987, when the borough constructed a new municipal building elsewhere.

This dispute began when the Borough, in attempting to sell the property and increase its marketability, obtained a release from Bethlehem Steel, in which the company waived the municipal restriction contained in the deed. The Nadorliks, who are the owners of a single family dwelling separated from the borough's lots by two other single-family dwellings, filed a complaint in equity, through which they sought to enjoin the borough from selling the property.

Ultimately, the court determined that the municipal use restrictions created a covenant running with the land, and therefore, declared void the recorded release that the borough and Bethlehem Steel had executed.

The borough then filed a petition with the common pleas court, seeking the court's approval under the Pennsylvania

Donated or Dedicated Property Act, Act of December 15, 1959, P.L. 1772, §§ 1–6, *as amended,* 53 P.S. §§ 3381–3386, or the Pennsylvania Inalienable Property Act, 20 Pa.C.S. §§ 8301–8306, to sell the property free of the municipal use restriction, and asked the court to impose a new single-family dwelling restriction.

The trial court, without indicating which act it relied upon, granted the borough's request. The O'Malleys, other neighbors who intervened, now appeal the trial court's imposition of the single-family dwelling restriction.

Essentially, this court must address two issues: (1) whether the trial court is empowered to remove a covenant running with the land under the Donated or Dedicated Property Act; and (2) whether the court's equitable powers allow it to impose a use restriction not included in the original deed.

## I. Removal of Municipal Restriction

We will not address the applicability of the Pennsylvania Inalienable Property Act because the trial court did not specifically rely upon that Act, and the O'Malley's, as appellants, have not presented a discussion of the Act in their brief. Furthermore, one decision of the Pennsylvania Supreme Court, *Conveyance of Land Belonging to DuBois,* 461 Pa. 161, 335 A.2d 352 (1975), suggests that neither the Nadorliks nor the O'Malleys would have standing in an action brought under the Inalienable Property Act.

In that decision, the court determined that an heir of a person who had conveyed realty to the City of DuBois did not have standing under the Revised Price Act, which the Inalienable Property Act replaced, to object to the city's proposed disposition of the property. Thus, the court noted that persons who only had tangential interests in private sales of real estate may not intervene in proceedings under the Act.

Although the standing of the parties under the Donated or Dedicated Property Act is not clear, Section 4 of

the Donated or Dedicated Property Act vests the Orphan's Court with jurisdiction over a municipality's request to dispose of property held in public trust. That provision states:

**Orphan's court relief**

When, in the opinion of the political subdivision which is the trustee, the continuation of the original use of the particular property held in trust as a public facility is no longer practicable or possible and has ceased to serve the public interest.... The trustee may apply to the orphan's court of the county in which it is located for appropriate relief. The court may permit the trustee to—

(1) Substitute other lands or property of at least equal size and value held or to be acquired by the political subdivision in exchange for the trust property in order to carry out the trust purposes.

(2) If other property is not available, sell the property and apply the proceeds to carry out the trust purposes.

(3) In the event the original trust purpose is no longer practicable or possible or in the public interest, apply the property or the proceeds therefrom in the case of a sale to a different public purpose.

53 P.S. § 3384.

The provision implicitly gives the orphan's court the power to remove a restrictive covenant; to hold otherwise would render nugatory the court's power to approve a sale, in a case such as this, where the borough's use of the property "is no longer practicable or possible or in the public interest." Thus, the trial court here properly removed the municipal use restriction from the deed.

## II. Imposition of New Restriction

■ The trial court also indicated that a court sitting in equity may fashion a fair remedy, and that its imposition of the single-family dwelling restriction does not constitute an abuse of the court's equitable powers. We disagree with the court's conclusion in this regard.

To support its reasoning, the court noted that courts of equity are not bound by strict rules of common law. However, the issue in this case does not rest solely on common law principles, but rather on the language of the Donated or Dedicated Property Act. Our Supreme Court has stated that orphan's courts are special tribunals for special cases, and that they are courts of limited jurisdiction which may exercise only those powers which are provided by statute, either expressly or by necessary implication. *In re Jervis' Estate*, 443 Pa. 226, 279 A.2d 151 (1971).

Although this particular issue has never been raised before, another statute that vests the courts of common pleas with equity jurisdiction provides guidance.

Section 1003 of the Public Employe Relations Act, Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S., § 1101.1003 allows the common pleas courts to grant equitable relief "if the court finds that [a] strike creates a clear and present danger or threat to the health, safety, or welfare of the public."

However, in *Bethel Parks School District v. Bethel Park Federation of Teachers*, 51 Pa.Commonwealth Ct. 104, 414 A.2d 145 (1980), in which we considered the trial court's equitable powers under section 1003 of the Public Employee Relations Act, the court determined that a chancellor "was empowered to grant only such equitable relief as was necessary to end the strike. Any further equity powers would have to come from a further statutory grant." 51 Pa.Commonwealth Ct. at 107, 414 A.2d at 147.

As the court pointed out in that decision, "[t]here is no common law equity jurisdiction in Pennsylvania and courts of equity in the Commonwealth may exercise only those equitable powers which have been specifically conferred by the legislature." 51 Pa.Commonwealth Ct. at 106, 414 A.2d at 147.

Following that analysis, an orphan's court's equitable powers under the Dedicated or Donated Property Act must be limited to those which enable it to provide the limited

relief the act describes—selling the trust property where the original trust purpose is no longer practicable or possible.

Furthermore, the Pennsylvania Supreme Court has indicated that the appropriateness of the relief which a court in equity grants should be tested by balancing the seriousness of the alleged injury against the cost of avoiding the injury. *Dexter v. Bebenek*, 458 Pa. 1, 327 A.2d 38 (1974). In that decision, the court referred to decisions it rendered regarding nuisances, such as *Commonwealth v. Tick, Inc.*, 427 Pa. 120, 233 A.2d 866 (1967), which upheld a decree barring the operation of a restaurant where the conduct of the patrons seriously interfered with the residential life of the neighborhood.

■ In this case, the Nadorliks seek protection from the possibility of a commercial use, which the borough's zoning ordinance presumably already regulates in the residential district in which the property is located. Also, as suggested above, where a use constitutes a nuisance, equity may enjoin objectionable activities. However, the question of whether the use of the property for other than single-family dwellings creates a public or private nuisance was not specifically before the court.

Hence, the court's imposition of a use restriction is unnecessary, because the Nadorliks' interest in maintaining the residential character of their neighborhood is already protected by the zoning ordinance, or by a nuisance action if the borough eventually permits a commercial use under the zoning ordinance.

As indicated above, the orphan's court's inquiry and the relief it grants should be limited to measures which accomplish the purpose of the Donated and Dedicated Property Act; the question of whether the proposed use constitutes a nuisance is not a concern for the court when a municipality merely requests the court to approve a sale under the Act.

The Nadorliks also argue that an owner of real estate has the right to restrict the future use of the land, and thus,

that the borough's request that the court impose the restriction renders the court's decision proper. The cases to which the Nadorliks refer support their argument that an *owner* may impose restrictions through a conveyance. Certainly the borough could include a restrictive covenant that precludes a commercial use if it conveys the property after the court approves the borough's right to sell the property without the municipal use restriction; but that is not the issue here. In this case, the question is whether or not the *trial court*, in authorizing a sale of municipal property under the Act, may impose a restriction.

Furthermore, although a court may enforce deed restrictions that prohibit certain uses or activities, there is no covenant in this deed restricting the use of the lots to single-family dwellings.

The decision of the trial court is affirmed as to its decision to allow the borough to sell the property without the municipal use restriction, and reversed as to the imposition of a single-family dwelling restriction.

## ORDER

NOW, March 1, 1990, the decision of the Court of Common Pleas of Cambria County, dated June 19, 1989, at No. 11–89–310, is affirmed with respect to the court's removal of the municipal use restriction, and is reversed with respect to the court's imposition of a single-family dwelling restriction.